THE EASTERN LAND, LUMBER AND MANUFACTURING COMPANY v. THE STATE BOARD OF EDUCATION and W. G. LEWIS.

*Tax   Title—Forfeiture—Evidence—Swamp   Lands—Innocent Purchaser.*

1. One claiming land under a tax sale, must show that the delinquent tax payer was the owner of the land at the time of the sale, (or when the lien for the taxes attached,) that it had been duly listed and that taxes were assessed against and due thereon, and that all of the existing prerequisites to the sale were observed.   The recitals in the deed, unsupported by evidence, *de hors*, in the absence of any statutory provision, are not evidence of these facts.

2. Forfeiture of an estate once vested will never be presumed.

3. An estate in lands did not become forfeited for failure to list and pay taxes under Chap. 36, Laws of 1842–'3, until the State, or its representatives, had the facts, upon which the forfeiture depended, determined by some proceeding in which the grantee might be heard, or put upon notice, that the forfeiture was claimed; but now, under that act as amended, § 2522 of *The Code*, the State Board of Education may assert its title, by reason of the forfeiture, by taking possession of or causing the lands to be surveyed.

4. A forfeiture will not be enforced against a purchaser for value, who had no notice of alleged default of those under whom he claims.

This is CIVIL ACTION which was tried before *Montgomery, J.,* at June Term, 1887, of PASQUOTANK Superior Court.

The object of the suit is to restrain the defendants from expelling the plaintiffs, their agents and servants from the

lands in controversy, (under § 1121 of *The Code*,) and to re-move cloud upon their title.

The following are the material parts of the " case agreed" and submitted to the Court for its judgment thereupon:

" The land in controversy was granted by the State to John Gray Blount, September 7, 1795.

On March 24; 1873, the heirs at law of said John Gray Blount, for a consideration of $1,014, conveyed their interest in said land to B. F. Sikes, with special warranty only.

B. F. Sikes executed a deed to Baird, Roper & Co., in March, 1873, for said land, and thereafter, by a regular se-ries of conveyances, it came to the plaintiff, a duly incor-porated company, by deed dated 31st of May, 1887.

The land is of the character known as "Swamp Lands," and was not cultivated, or actually occupied, by any one up to March 24th, 1873. Very shortly after that, to-wit: May 15, 1873, Baird & Roper commenced to work and occupy the same, and continued so to do constantly till plaintiff brought this action in 1887.

Since 1873 these lands, under the boundaries set forth in the complaint, have been in the actual possession of plain-tiffs and those under whom they claim.

Prior to March, 1873, no one had actual possession thereof.

The defendant, the State Board of Education, show a deed, as part of their claim to this land, signed " James Hoskins, Sheriff of Tyrrell County, N. C., to Nathaniel Alexander, Governor," purporting to convey the said land for taxes due by Thomas Fitts, as property of Thomas Fitts, which is dated October 26, 1807.

The original thereof is now on file in the Secretary of State's office, pasted in a book marked " Old Deeds, Lands Sold for Taxes."

It is admitted that, on the 10th of March, 1801, John G. Blount executed a deed to one William Orr for 6,375 acres

of land, in which deed, in describing the land conveyed therein, a call is made " to a pine, Fitts' and Blount's corner," " then with Fitts' line," &c. This land, so conveyed to Orr, is a part of the Blount grant before named, but is no part of the land in controversy in this action, nor is it any part of the land described in the deed from Hoskins, Sheriff, to Alexander, Governor.

The lands in controversy, and described in the Blount grant, were never listed for taxation by John Gray Blount, or any other person, from the year 1817 up to his death, in 1833, nor did he ever pay any taxes thereon during that period, nor were any taxes levied thereon.

There is no evidence as to whether he listed them and paid thereon prior to 1817, or not.

The tax lists of Tyrrell County are in existence since 1817, and up to 1874, and the lands do not appear as listed thereon. The tax lists prior to 1817 are not in existence.

Since Baird & Roper purchased the lands, in March, 1873, they regularly listed them in Dare County and paid taxes thereon.

The said lands formed a part of Tyrrell County until Dare County was formed, pursuant to an act of the Legislature, when they became a part of Dare County.

After the death of John Gray Blount, in 1833, his heirs at law, under whom plaintiff claims, never listed said lands for taxes, and never paid any taxes thereon. The heirs of John Gray Blount never claimed the lands, nor any part thereof, until March, 1873, when they conveyed their interest to Sikes, as hereinbefore stated. John Gray Blount, nor his heirs at law, never made any effort to redeem said lands if they were forfeited.

The defendant Board commenced to survey these lands, to-wit: the said Blount grant for 90,000 acres, in September, 1887, and surveyed all the land lines of the grant, and, knowing the water lines, finished the survey by November 1st, 1887.

In December, 1867, the defendant Lewis, then agent for the Literary Fund, and under its instructions, started with a proposed purchaser to inspect and sell these lands, but owing to high water did not succeed in reaching them.

These lands were commonly known and designated in the neighborhood and in Tyrrell County as "State Lands," and were generally so called, but Baird & Roper, and those claiming under them, never knew of it.

Baird & Roper, and those who succeeded them, paid valuable consideration for the lands, and had no notice of the alleged title of the defendants, other than the registration of the "Hoskins Deed," if that be notice; and plaintiffs had no actual notice of that deed when they bought.

There is no deed on record or in existence, so far as the parties hereto know, from John Gray Blount to Thomas Fitts.

Baird & Roper, and those succeeding them, paid no arrearages of taxes prior to March, 1873.

The defendant, "The State Board," claims the lands in controversy :

1. Under the tax sale and deed by Hoskins, Sheriff, to the Governor.

2. That these lands were forfeited to the State under act of 1842, chapter 36, and became vested in the defendant Board by the Legislature, because they were never listed for taxation from 1817 to 1873, and no taxes paid thereon, and no claim made by the heirs of the grantee Blount, during that time.

3. If judicial process be necessary to declare a forfeiture, that the said lands be now declared forfeited.

It is admitted that the plaintiff owns the lands in controversy through a regular chain of title from the State, unless the same is defeated by the claims of the defendant Board, as hereinbefore set forth.

There is no evidence of any other survey or actual entry by the defendant or its predecessors, except as herein stated."

" Upon the facts as stated in the case agreed, the Court was of the opinion that plaintiffs are the owners of the land in controversy, and gave judgment accordingly.

Defendant excepted, and assigned as error, that upon the facts, as stated, judgment ought to have been given for defendants, as prayed for in their answer, and according to their various claims as stated in the case agreed.

Exception overruled, and defendant appealed.

*Messrs. W. D. Pruden* and *L. N. Bangs*, for the plaintiffs.

*The Attorney General* (and *Mr. Geo. H. Brown, Jr.*, by brief), for defendants.

MERRIMON, J.  On the argument the counsel for the appellant properly conceded that the plaintiff, appellee, shows apparently title to the land in controversy, because it shows a grant therefor from the State to John Gray Blount, dated the 7th day of September, 1795, and that it derives title from him through sundry *mesne* conveyances, the regularity and sufficiency of which, as to order and form, are not questioned.

But the appellant contends first, that the grantee Blount conveyed the land before 1806 to Thomas Fitts, and that the deed mentioned of the Sheriff, executed to the Governor, purporting to convey the land to him for unpaid taxes of Thomas Fitts for that year, had the effect to vest the title thereto in the State, and therefore the *mesne* conveyances relied upon by the appellee passed no title to it; and, secondly, that by the force and effect of the statute, (Acts 1842–'3, Chap. 36; *The Code,* § 2522,) the land was forfeited, and became forfeit to the State for unpaid taxes, and because the same was not listed for taxation from the year 1817 to 1873.

First, as to the effect of the deed from the Sheriff to the Governor.  It does not appear from any competent evidence

that Fitts ever owned the land described in it, or that he was liable to pay taxes on that account, or that it was listed by him, or another for him, for taxation, or that taxes were assessed against or levied upon it as to him or any other person for the year 1806. Nor does it appear that any of the prerequisites to a sale of land to pay taxes, as required by law at the time of the supposed sale, were in any respect observed and complied with by the Sheriff and other officers connected with the public service in respect to taxes. The recitals in the Sheriff's deed, in the absence of statutory provision making them such, were not evidence that they were complied with, without evidence *de hors* the deed that they were; the deed itself was wholly ineffectual for the purpose contemplated by it. This, as to such deeds, is too well settled to admit of question. *Register* v. *Bryan*, 2 Hawks, 17; *Fox* v. *Stafford*, 90 N. C., 296, and numerous cases there cited; Bailey's *Onus Probandi*, 276, *et seq.*

It was suggested on the argument that the statutes (Acts 1885, Chap. 177, § 42; Acts 1887, Chap. 137, §§ 73, 74,) which provide that a Sheriff's deed for land sold to pay taxes shall be presumptive evidence of certain material facts essential to render such deed effectual, might apply in this case. They certainly do not apply in terms, but they have reference to sales of land for taxes made as provided in, and in pursuance of them. There is nothing in them going to show by implication that they were intended to have a retro-active operation, nor have they such effect. They do not apply in this and like cases that arose before they were enacted.

It was further contended on the argument, that the deed of the Sheriff was an ancient deed, and proved itself, and it was therefore evidence of title in the State. The rule invoked does not apply. There was no question that the deed was or was not executed; that it was, was not denied, and it so appeared; but, accepting it as proven, it was in and by

itself ineffectual as a conveyance, and as evidence of title, and, for reasons already stated, it did not pass the title to the State. Moreover, if the deed were ancient and treated as color of title, it does not appear that the State, or any agency of it, ever had possession of the land claiming under it, nor is there any evidence of acts of ownership of it, continuous or otherwise, by the State or any of its agencies, until 1887, when the appellant had it surveyed. Possession under this deed, in any aspect of it, was necessary to give it effect as an instrument of conveyance. *Plummer* v. *Baskerville*, 1 Ired. Eq., 252; *Davis* v. *Higgins*, 91 N. C., 382.

Secondly, as to the alleged forfeiture. It does not appear that the original grantee, or other person, listed the land in question for taxation from the year 1806 until the time of his death in 1833, nor that he or any other person paid taxes on account of the same during that, or any part of that time, nor did he or any other person during that time have actual possession of it, or exercise authority actively over it by acts of ownership of any kind, nor did his heirs after his death, until the 24th of March, 1873, when they conveyed the same by their deed to B. F. Sikes, through whom the appellee claims and traces its title. The grant passed the title to the land from the State to the grantee, and, notwithstanding the latter's default as to the payment of taxes on account of it, in the nature of the matter he had, and continued to have, the title to and actual or constructive possession of the land during his life-time ever after the execution of the grant, until he parted with such title and possession by a proper conveyance, or until some other person took and held actual possession of the land adversely to him, for such length of time under such circumstances as gave the trespasser a good title to it, or until he perfected his title thereto, and it became forfeit to the State; and at his death such title and possession descended to his heirs, or passed to his devisees, if he left a will, and they, respectively, had the like title and possession, not-

withstanding their like default as to the payment af taxes, until they in like manner and for like causes parted with the same.

So far as appears, the grantee did not, in his life-time, voluntarily part with his title to the land, by any conveyance thereof, nor did his heirs after his death, until in March, 1873, nor did they lose such title and constructive po session by the adverse possession, with color of title or otherwise, of a trespasser. Nor did the mere failure of the grantee, or that of his heirs after his death, to list the land for taxation and to pay taxes on account of the same, divest the grantee in his life-time, or divest his heirs after his death, of such title and possession, unless the land became forfeit to the State by the mere force and effect of the statute (Acts 1842–'3, Chap. 36), without any interference on the part of the State, or any of its agents by acts of ownership, or by any action or judicial proceeding to ascertain and declare a forfeiture of the land to the State.

The appellant contends that the act just cited had such effect, because it in broad sweeping terms so provides, as follows: " That any person or persons who have heretofore at any time obtained a grant or grants from the State for any swamp lands in this State, and who, or their heirs or assigns, have not regularly listed the same for taxation and paid the taxes due thereon to the person or persons entitled to receive the same, such person or persons so having obtained such grant or grants, their heirs or assigns *shall forfeit* and lose all right, title and interest in the said swamp lands, and the same shall, *ipso facto*, revert to and be vested in the State, unless such person or persons, his heir or their heirs or assigns shall, within twelve months from the passage of this act, pay to the Sheriff of the County in which said lands lie all the arrearages of taxes due on the said lands, with the lawful interest thereon from the time said taxes ought to have been paid." The appellee, on the contrary, insists

that this statutory provision, properly interpreted, fairly implies that the prescribed forfeiture cannot take effect and revest the title to the land in the State until the latter shall, in some way, take proper action to ascertain, declare and give effect to the alleged forfeiture, giving the defaulting party opportunity to be heard in his defence; and that if this is not so, then the provision is unconstitutional and void, because it affords the defaulting party no opportunity to be heard in defence of his right before a judicial or other tribunal.

The strong presumption is that this statute harmonizes with the Constitution, and is valid; but we are not called upon to decide that it is or is not so, because this Court interpreted it in *Phelps* v. *Chesson,* 12 Ired., 198, and expressly decided that inasmuch as neither the State nor its assigns (the immediate predecessor corporation of the present defendant appellant) had taken any proceedings, or in any way signified an election to defeat the estate of the alleged defaulting party, it was still in him, and he was entitled to maintain his action.

The counsel for the appellant seemed to question the correctness of that interpretation. We think it is reasonable and just, and it seems to us fully warranted, certainly by the spirit and reason of the staute. It is not to be presumed or merely inferred, that the legislature intended to deprive the grantee of his estate without affording him opportunity, in some affirmative way, that actively puts him on notice to defend his right, if he shall see fit, and an intention to do so could only appear by clear and explicit terms, leaving no doubt as to such intent, and we forbear to say here whether such an enactment would or would not be of force for any purpose. The reasonable inference is that the legislature intended to allow such opportunity, and it sufficiently appears that it has done so. The Court said in the case last cited, with much point

and force, that "the law books teem with cases fixing the principle that an estate once vested cannot be defeated by a condition or forfeiture, without some act on the part of the grantor or his heirs by which to take advantage of the condition or forfeiture, even when the words of the condition are, "the estate shall therefore be void and no of effect," which words have the same legal import as *ipso facto* void. In this act, after the emphatic declaration that the land shall *ipso facto* revert to and be vested in the State, there is the qualification, unless such grantee, his heirs or assigns shall, within twelve months pay the taxes, &c. This shows conclusively, that it was contemplated to have some proceeding on the part of the State or its assignees, the President and Directors of the Literary Board, so as to give the grantee, his heirs or assigns, "a day in Court," an opportunity to show that the arrearages of taxes had in fact been paid within the year." And we may add that the strong words, "shall *ipso facto* revert to and be vested in the State," are used to imply that the grant need not be cancelled, and that no deed of conveyance shall be necessary to revest the title in the State—the statute had such effect when and as soon as the forfeiture is made complete by some sufficient act of its own or some adequate proceeding to that end. Moreover, it is not declared in the statute that the land shall at once be *forfeit* to the State on such failure to list the land for taxation and to pay the taxes due on account of it, or at the end of twelve months next thereafter.

The interpretation thus given is in harmony with the statute (Acts 1850-'51, Ch. 102, § 2,) declaratory of the meaning of the statute interpreted. While this declaratory statute could not determine the meaning of that to which it refers—that being the province of the Courts—still it goes to show that the Legislature was satisfied with the decision of this Court. Repeatedly, since it was made, the Legislature has acted upon the subject to which it relates, and the law,

as settled by it, has not since been disturbed. It may, and should be regarded as settling the meaning of the statute to which it refers, and in a way entirely satisfactory to the legislative branch of the government. We are not at liberty, nor are we in the least inclined to disturb the decision or to doubt its correctness.

Neither the State nor the defendant, nor "The President and Directors of the Literary Board of North Carolina," nor any agency of the State ever after the alleged forfeiture of the land in question took possession of it, or surveyed it, or brought any action, or took any proceeding whatever, or did any act whereby to enforce such forfeiture, or to make the same complete and effectual, or to signify the intention of the State or its assignees to defeat the estate of the grantee in his life-time, or that of his heirs after his death, or that of those claiming under them, and caused the land to "revert to and be vested in the State" until 1887, when the defendant caused the same to be surveyed. This survey was not made until about fourteen years next after Baird, Roper & Co., through whom the appellee claims, purchased the land from B. F. Sikes. During all that time they, and those claiming under them, including the appellee, respectively, regularly listed the lands for taxation and paid the taxes due on account of the same, and they had no notice of the alleged title of the defendants.

It is contended that the survey thus made was sufficient notice of the purpose of the State, through the defendant and the State Board of Education, to insist upon the forfeiture of the land, and perfect the same so as to cause the land to "revert to and be vested in the said Board (The State Board of Education), upon the same trusts as they hold other swamp lands," &c., as provided by the statute (*The Code*, § 2522). We cannot think so. The statute contemplates that the forfeiture shall be made complete and effectual with reasona-

ble promptness. Until it is thus perfected the grantee or his heirs or his assigns, accordingly as one or the other of them may have the title to the land, continue to have it, and can pass the same to any person who may buy it in good faith. The statute does not contemplate a forfeiture as against such purchaser in good faith. It does not so provide in terms, or by just and necessary implication, and a forfeiture is not intended unless it so appears by express words in the statute or by such implication. Forfeitures are never created, and do not arise by mere inference. The statute appears, substantially, now as it did when it was at first enacted and amended, and it provides that " *Any person, his heirs or assigns,* having at any time obtained a grant from the State for any swamp lands which *have been surveyed or taken possession of* by the State Board of Education or their agents, and shall not have regularly listed the same for taxation and paid the taxes due thereon to the person entitled to receive the same, and *such grantee and his heirs or assigns* shall forfeit," &c. It will be observed that the forfeiture is limited, and extends only to the *grantee and his heirs or assigns*; it does not embrace the purchasers of the land from them *bona fide;* it is not declared that the latter shall forfeit the land for the default of the former, nor that the lands shall be forfeited for such default, while the title thereto is in the innocent purchaser, nor can the Court *infer* that the Legislature so intended.

By the term "assigns," as used in the statute, is not meant *purchasers* of the land from the grantee or his heirs after the grant had issued, but persons to whom the grantee had assigned his right to have the grant before the same issued, and to whom it was issued by virtue of such assignment. It frequently happened that persons would take proper steps— make proper entries of swamp lands, and as well other lands, and having acquired a right to have a grant for the land so entered, could sell and assign such right before it was issued,

and the assignee would obtain the grant from the State. The purpose of the statute was, and is, to embrace such "assignees." It would be unreasonable and unjust to make the forfeiture apply to the land when and after the title thereto had passed to innocent purchasers. There is no provision in the statute that implies such purpose—the contrary appears, in that it is expressly declared that the forfeiture shall apply only to "swamp lands which have been *surveyed or taken possession of*," &c. Such manifestation of purpose on the part of the State to enforce the forfeiture is intended to give notice of its purpose, not only to the "grantee and his heirs or assigns," but as well to all other persons who may wish to purchase or have anything to do with the land.

Hence the survey made by the appellant in 1887, fourteen years after the heirs of the grantee had sold and conveyed the land to the purchasers, who had no notice or knowledge of the forfeiture unperfected, could not affect adversely such innocent purchaser. The agencies of the State failed to comply with the requirements of the statute in apt time, that is, within the time prescribed by law, and while the title to the land remained in the grantee and his heirs. As they failed to do so, neither the statute nor the State will allow them, after the lapse of many years, to disturb the rights of innocent purchasers, who have regularly listed the lands for taxation and from time to time have paid the taxes due on account of the same.

It is admitted that the appellee has shown "a regular chain of title from the State, unless the same is defeated by the claims of the defendant (appellant) Board," We are of opinion that the title of the appellee thus admitted has not been overthrown by anything shown by the appellant, and therefore the judgment must be affirmed.

Affirmed.