## PARISH v. EAST COAST CEDAR COMPANY.

(Filed November 24, 1903.)

DUE PROCESS OF LAW—*Constitutional Law—Forfeitures—Vested Interests—Taxation—The Code, sec. 2522—Acts 1889, ch. 243—Const. N. C., Art. 1, sec. 17—Const. U. S., Fourteenth Amendment, sec. 1.*

> An act which provides that where the owner of swamp land, his heirs or assigns, fail to pay all arrearages of taxes levied and assessed thereon, or which ought to have been levied on or before a certain date, and that such land shall be forfeited to and vested in the state, without any judicial proceeding, is unconstitutional.

ACTION by J. S. Parish against the East Coast Cedar Company and others, heard by Judge *Frederick Moore* at Novem-

ber Term, 1902, of the Superior Court of DARE County. From a judgment for the defendant the plaintiff appealed.

*Shepherd & Shepherd* and *W. M. Bond,* for the plaintiff.
*E. F. Aydlett* and *F. H. Busbee,* for the defendant.

DOUGLAS, J.   In this cause, a jury trial being waived, the following facts are found by the Court:

"1. Before the bringing of this action the State Board of Education, for value, executed and delivered to plaintiff a deed conveying in fee-simple to plaintiff the tract of land described in the complaint, said deed being properly probated and registered before this action was started in the county in which said land is situated.

"2. That all of said land is swamp land, containing more than two thousand acres in that body, and plaintiff has no source of title to it except by virtue of said deed.

"3. That after plaintiff procured said deed, before the suit was started, defendants entered upon said land and cut and removed therefrom timber trees worth —— dollars, under deed purchased by defendant before said Board made deed to plaintiff.

"4. That about one hundred years ago said land was granted by the State to one Hunnings, which grant was registered in the county said land was in as soon as same was issued.

"5. That the taxes for several years before and up to and including the year 1891 have never been paid to the State upon said lands.   Defendant owns whatever title the heirs of said Hunnings had at the time their deed was made to defendant.

"6. That said Board of Education had never had said land surveyed nor exercised any control over it before making said deed to plaintiff.

"Defendants admit that plaintiff owns said land if said

deed was sufficient to convey the title—that is, if said Board of Education owned said land, under The Code, Vol. II, ch. 15, and laws amending same, then plaintiff was owner of same at the time defendants cut timber from same.

"Plaintiff admits that defendants own said land if said deed to plaintiff did not in law convey a good title to plaintiff."

Upon this state of facts the Court below adjudged that the defendants were the owners of the land in question.

The single question presented for our consideration is the constitutionality of chapter 243 of the Laws of 1889, amending section 2522 of The Code. Section 2522, before the amendment, was as follows: "Any person, his heirs or assigns, having at any time obtained a grant from the State for any swamp lands which have been surveyed or taken possession of by the State Board of Education or their agents, and shall not have regularly listed the same for taxation and paid the taxes due thereon to the persons entitled to receive the same, such grantee and his heirs or assigns shall forfeit and lose all right, title and interest in the said swamp lands, and the same shall *ipso facto* revert to the State and be vested in the said Board upon the same trusts as they hold other swamp lands, unless such person, his heirs or assigns shall have paid to the sheriff of the county in which said lands lie, prior to the 21st day of January, one thousand eight hundred and forty-four, all the arrearages of taxes due on said land, with interest thereon, from the time the taxes ought to have been paid."

The part of the amending act necessary for our present consideration is as follows: "Upon the failure of any such grantee or grantees, their heirs or assigns, to pay to the sheriff or other person authorized to receive the same all arrearages of taxes which were levied and assessed, or *which ought to have been levied and assessed,* with lawful interest due thereon, on or before the said 21st day of January, 1890, all

the right, title and interest in said swamp land belonging to or vested in such grantee or grantees, their heirs or assigns shall become forfeited and vested in the State Board of Education; and no suit, action, proceeding, order, decree or judicial determination shall be necessary to such forfeiture, but it shall be absolute at the expiration of the time herein prescribed, upon the non-payment of the aforesaid taxes and interest." The *italics* are ours. This act is apparently intended, at least by the draftsman, to evade the construction placed upon the old act by the cases of *Phelps v. Chesson,* 34 N. C., 194, and *Land Co. v. Board of Education,* 101 N. C., 35. In the former case this Court held that, although the act provided that the lands should *"ipso facto* revert to and be vested in the State" unless all arrearages of taxes were paid within twelve months of the passage of the act, the said lands were not forfeited in the absence of any procedure to declare and enforce forfeiture. The Court, by *Pearson, J.,* says: "Admit that this act has the force of inserting in the original grant a condition that if the taxes are not paid when due, but shall at any time be in arrear, 'the land shall *ipso facto* revert to and be vested in the State,' according to the well-settled principles of law if the taxes were in arrear at any time the estate created by the grant would not be defeated and revert to the grantor unless some solemn act was done by which to enforce the condition; for the estate, having commenced by a solemn act, viz., a *grant,* must be defeated by an act equally solemn, upon the maxim of the common law, *'eo ligamine quo ligatur.'* If a feudal tenant failed to perform the services his estate was not defeated until the lord had judgment in a writ of *cessavit.* If a subject incurs a forfeiture by committing treason his estate is not defeated until 'office found.' If a feoffment is made on condition, and the condition is broken, the estate continues until it is

133——31

defeated by the entry of the feoffor or his heirs. Coke on
Littleton, chapter on Conditions. The law books teem with
cases fixing the principle that an estate once vested cannot
be defeated by a condition or forfeiture without some act on
the part of the grantor or his heirs by which to take advan-
tage of the condition or forfeiture, even when the words of
the condition are 'the estate shall therefore be void and of no
effect,' which words have the same legal import as '*ipso facto*
void.' "

The Court expressly declined to pass upon the constitu-
tionality of the act on the ground that it became unnecessary
in view of the construction placed upon it. In *Land Co. v.
Board of Education,* 101 N. C., 35, the Court, in approving
the interpretation placed upon the statute in Phelps' case,
says: "The counsel for the appellant seems to question the
correctness of that interpretation. We think it is reasonable
and just, and it seems to us fully warranted, certainly by the
spirit and reason of the statute. It is not to be presumed
or merely inferred that the Legislature intended to deprive
the grantee of his estate without affording him opportunity
in some affirmative way that actively puts him on notice to
defend his right if he shall see fit, and an intention to do so
could only appear by clear and explicit terms, leaving no
doubt as to such intent, and we forbear to say here whether
such an enactment would or would not be of force for any
purpose. The reasonable inference is that the Legislature
intended to allow such opportunity, and it sufficiently appears
that it has done so."

The Court again declines to pass upon the constitutionality
of the statute in the following significant words: "*We for-
bear to say here whether such an enactment would or would
not be of force for any purpose.*"

The present statute is so framed as to require an explicit
adjudication of its constitutionality. Courts naturally and

properly avoid passing upon the constitutionality of an act of the law-making power if substantial justice can be attained in any other way; but in the face of an imperative duty we are forced to declare it unconstitutional, as being not only in violation of the express provisions of that instrument, but subversive of natural and antecedent rights which the Constitution itself was adopted to protect. It is clear to us that in *Phelps v. Chesson* and *Land Co. v. Board of Education, supra,* this Court construed the words *"ipso facto"* in the manner it did as the only constitutional construction of which the act would permit. The very fact that the Court declines to express any opinion as to the constitutionality of an act, and then proceeds to place upon the act a construction that renders it practically harmless, is a very strong intimation of its unconstitutionality when construed in any other manner. Thus, while those cases are not direct authorities for our decision in the case at bar, they are strongly persuasive in their tendency. The Constitution of this State, in Art. I, sec. 17, says that "No person ought to be taken, imprisoned or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property but by the law of the land." Section 1 of the Fourteenth Amendment to the Constitution of the United States contains the following provision: "Nor shall any State deprive any person of life, liberty or property without due process of law." We refer to the Federal Constitution only by way of analogy, as we base our decision in the case at bar exclusively upon the provisions of the Constitution of this State.

It is well settled that the phrases "due process of law" and "the law of the land" mean identically the same thing, and the authorities on each are cited interchangeably. The latter expression is taken from section 39 of *Magna Charta,* which is repeated in chapter 29 of the Charter of Henry III.,

confirmed by Edward I. It is difficult to define what is due process of law, but perhaps the definition most largely quoted is that of Mr. Webster in his argument in the Dartmouth College Cases, which is as follows: "By the law of the land is most clearly intended the general law, a law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not therefore to be considered the law of the land." Mr. Webster, after giving the above definition, continues as follows: "If this were so, acts of attainder, bills of pains and penalties, acts of confiscation, acts reversing judgments, and acts directly transferring one man's estate to another, legislative judgments, decrees and forfeitures in all possible forms would be the law of the land. Such a strange construction would render constitutional provisions of the highest importance completely inoperative and void. It would tend directly to establish the union of all powers in the Legislature. There would be no general permanent law for courts to administer or for men to live under. The administration of justice would be an empty form, an idle ceremony. Judges would sit to execute legislative judgments and decrees; not to declare the law or to administer the justice of the country." It is significant that he includes "acts of confiscation" and "legislative forfeitures" among the intolerable evils to be avoided. The result of the best modern authorities is well stated in 10 Am. & Eng. Enc. of Law (2d Ed.), as follows: "Though all the preceding definitions throw much light on the meaning of due process of law, the most satisfactory definition is that it secures to every one the right to have notice of any proceeding by which his rights of life, liberty or property may be affected, and to be afforded an opportunity to defend,

protect and enforce such rights in an orderly proceeding adapted to the nature of the case."

In *Henderson v. Wickham,* 92 U. S., 259, the Court says: "In whatever language the statute may be framed, its purpose and its constitutional validity must be determined by its natural and reasonable effect." Again, the Court says, in *Simon v. Craft,* 182 U. S., 427: "The essential elements of *due* process of law are notice and opportunity to defend. In determining whether such rights are denied we are governed by the substance of things and not by mere form." It is useless to cite further authorities as to what is *due* process of law, when the act itself specifically provides that *no process* whatever shall be necessary. It expressly provides that: *"No suit, action, proceeding, order, decree or judicial determination shall be necessary to such forfeiture."*

The act contains another most singular provision, which of itself would be fatal to its validity were there no other objections. It provides that this forfeiture of the land shall become absolute upon the failure to pay not only such taxes as were actually levied but also all those *"which ought to have been levied and assessed."* Whether the Legislature could pass a valid act providing for the forfeiture of land for nonpayment of taxes *thereafter* lawfully levied is a question not before us and on which it would be useless to express an opinion. It must be borne in mind that this act does not pretend to provide for the collection of back taxes, but imposes a forfeiture for the failure to pay back taxes. The principles are essentially different. The first simply provides for the collection of the debt, while the other is in effect a confiscation of the property for an antecedent omission of duty. Let us see what would be the practical operation of the act if enforced. There is no limitation as to how far back the act will operate, as it provides that the land shall be forfeited unless *all* arrearages of taxes are paid. This would appa-

rently take it back to the date of the grant, which in the case at bar was issued about one hundred years ago. If the taxes for 1804 had not been paid the land would have become absolutely forfeited to and vested in the State Board of Education on the first day of January, 1890, in spite of the fact that the taxes for all the other eighty-seven years might have been paid in full. The owner, who might have been in actual possession personally and through those under whom he claimed for a hundred years and may have paid all subsequent taxes, would be utterly helpless, as no statute of limitation would have had time to run against the State since 1890. He would be at the mercy of the Board of Education, or perhaps even worse than that if, forsooth, some neighbor who coveted his little vineyard had obtained a deed for his land, or even an option thereon.

Of course we must take the act as we find it, and declare it unconstitutional upon its face, but we cannot do the Legislature the injustice of supposing that it ever intended to legalize such unjust possibilities by an act passed in the closing days of its session.

Our attention has been called to the case of *State v. Sponangle,* 45 West Va., 415, 43 L. R. A., 727. We have carefully examined that case, in which there is a learned and elaborate opinion by a distinguished jurist. We think there is a substantial difference between the statutes; but, in any event, wherein that opinion differs from the views herein expressed, it fails to meet our approval. The distinction between a forfeiture and a sale for taxes must be borne in mind, as they are essentially different in nature and result. A sale is the collection of a debt, is public, is made only after notice, and passes no title until the deed is made, of which the owner must have additional notice. In the meantime he can pay his taxes and keep his land. On the contrary, a forfeiture works

secretly and immediately, without notice to the owner and without opportunity of redemption.

Judgment affirmed.