STATE *vs.* ELLIS ROSE.

(*February* 5, 1929.)

PENNEWILL, C. J., RICE, HARRINGTON, RICHARDS and ROD-
NEY, J. J., sitting.

*Clarence A. Southerland*, Attorney-General, and *Leonard G.
Hagner*, Deputy Attorney-General, for the State.

*P. Warren Green* for petitioner.

RICHARDS, J., delivering the opinion of the Court:

The grounds upon which the petitioner claims that he is entitled to the return of his automobile are two:

First; that the portion of the statute providing for the forfeiture of a conveyance used in the transportation of liquor, upon the conviction of the user of said conveyance, applies to public and private carriers only and not to individuals;

Second; that said portion of the statute is in violation of the Constitution of the United States and the Constitution of the

State of Delaware, in that, when invoked, it amounts to a taking of property without due process of law.

 The argument advanced by the Attorney-General, to the effect that the object of all interpretations and constructions of statutes is to ascertain and carry out the intention of the law makers and that the whole statute must be considered together, cannot be denied.

Therefore, in order to determine the first reason assigned by the petitioner, it is necessary to examine and consider carefully all sections of the statute which in any way deal with the question raised.

*Section* 2 of the Act provides:

"It shall be unlawful for any person or persons, corporation, firm, partnership, association or collection of individuals living, residing or staying in those portions of the State of Delaware where the sale of liquors is prohibited by law, to receive directly or indirectly liquors. * * * "

*Section* 3 of the Act provides:

"The Attorney-General of the State of Delaware, or any of deputies, may grant a permit in writing to any person or persons, corporation, partnership, association or collection of individuals living, residing or transacting business in the territory of the State of Delaware wherein the manufacture and sale of liquors are prohibited by law to have transported by common carrier or otherwise, and to have and possess liquors. * * *"

*Paragraph* 1 *of Section* 4 of the Act provides:

"It shall be unlawful for any person or public or private carrier to transport or deliver to any person or at any place or to transfer to any place within the State of Delaware where the sale of liquors is prohibited by law, or to any person, carrier or agent any liquors."

*Paragraph* 3 *of Section* 4 provides:

"Any public or private carrier carrying, transporting, transferring or delivering liquors in violation of this section in automobile, motorcycle, carriage, wagon, boat, vessel or other conveyance shall be subject to the fines and penalties provided by this Act, and in addition thereto conviction of such violation shall work a forfeiture to the State both of the liquors and also of the conveyance by which the liquors were carried. * * *"

*Section* 6 of the Act provides:

"It shall be unlawful for any person within the State of Delaware wherein the sale of liquors is unlawful to advertise or give notice by signs, billboards for himself or another, of the sale or keeping for sale of liquors. * * *"

### *Section* 7 provides:

"Every justice of the peace, upon information made under oath or examination that any person is manufacturing, selling, offering or exposing, keeping or storing for sale or barter, contrary to law, any liquors, or that the affiant has cause to believe and does believe that such liquors are being manufactured, sold, offered, kept or stored for sale or barter in any house, building or other place named therein, contrary to the provisions of this Act, shall issue his warrant requiring the persons suspected to be arrested, and the said house, building or other place to be searched, and the parties found therein to be arrested and brought before him as aforesaid, and in such warrant shall require the officer to whom it is directed to seize and hold all liquors, found in such house or building, and also vessels, bar fixtures, screens, glasses, bottles, jugs and other appurtenances apparently used in the sale, keeping or storing of such liquors contrary to law."

### *Section* 8 provides:

"If, upon examination of such person, it shall appear to such justice, that there is probable cause to believe him guilty of the offense charged, the accused shall be required to enter into a recognizance, with sufficient securities, in the sum of not less than five hundred dollars ($500.00), to appear before the next term of the Court of General Sessions to answer an indictment if one be preferred against him. * * *"

### *Section* 9 provides:

"Whenever liquors shall be seized in any room, building or place which has been searched under the provisions of this Act, the finding of liquors in excess of the quantity permitted by this Act in such room, or of a United States retail liquor dealer's tax receipt therein shall be *prima facie* evidence of the unlawful selling and keeping and storing for sale of the same by the person or persons occupying such premises, or by any person named in any such United States tax receipt posted in such room, or his associates, agents or employees thereunder, and the proprietor or other person in charge of the premises where such liquors were found, or who is so named in such United States tax receipt, and his associates shall be subject to trial by due process of law on the charge of selling or keeping or storing for sale unlawfully such liquors, and upon his conviction the liquors found upon said premises shall at once be publicly destroyed by some responsible person to be appointed by the Court."

### *Section* 10 provides:

"The payment of the special tax required of liquor dealers by the United States by any person or persons other than druggists, within those portions of the State of Delaware wherein the sale of liquors is prohibited, shall be *prima facie* evidence that such person or persons are engaged in keeping, selling, offering and exposing for sale, liquors contrary to the laws of this state, and a certificate from the collector of internal revenue, his agents, clerks, or deputies showing the payment of such tax and the name or names of person or persons, if any, associated with the person to whom such tax receipt is issued, shall be sufficient evidence of the payment of such tax, and of the association of such persons for the selling, keeping, offering and exposing for sale of liquors contrary to the provisions of this Act in all trials or legal inquiries."

We have quoted from the above-mentioned sections of the Act to show the number of times the words person or persons appear and the connection in which they are used. Each section of the Act prohibiting some particular thing, or granting some particular privilege, sets forth plainly to whom it shall apply.

*Section* 4 of the Act, being the section which demands our most careful attention, in the first paragraph, prohibits the transportation of liquor by any person, or public or private carrier, providing for the punishment of those who do, and there can be no doubt that it applies to persons and public or private carriers alike.

The second paragraph of the section stipulates that the provisions of the section shall apply to all packages of liquor, whether broken or unbroken. Then comes the third paragraph which standing alone, with a paragraph intervening between it and the first paragraph making it unlawful to transport liquor, which provides for the forfeiture to the State of the conveyance by which the liquor was being transported.

The word person cannot be found in this paragraph, the words used being:

"Any public or private carrier carrying, transporting, transferring or delivering liquors in violation of this section in automobile, motorcycle, carriage, wagon, boat, vessel or other conveyance shall be subject to the fines and penalties provided by this Act, and in addition thereto conviction of such violation shall work a forfeiture to the State both of the liquors and also of the conveyance."

It should be noted that this paragraph provides that any public or private carrier carrying liquors in violation of this section, in automobile or other conveyance, shall be subject to the fine and penalties provided by the Act, and in addition to such fines and penalties provides for the forfeiture to the State of the conveyance used in carrying such liquors.

The fines and penalties for carrying and transporting liquors are found in *Paragraph* 1 *of Section* 4 of the Act and that paragraph uses the words, "it shall be unlawful for any person or public or private carrier to transport * * * liquors," showing plainly that was intended to apply to persons as well as public and private carriers; but the provision for the forfeiture of the

liquor and the conveyance by which it was being transported, being *Paragraph* 3 of the same section, uses the words "any public or private carrier carrying," showing that this paragraph was intended to apply to public and private carriers only.

The only way this paragraph can be held to include persons and to thereby work a forfeiture of conveyances used by persons unlawfully transporting liquor, is by construing it together with other portions of the Act and holding that the Legislature intended to include the word person with the words public or private carrier in the first portion thereof, or in some other portion of the paragraph; or intended that the words used should be applicable to persons. Each section of the Act seems to be separate and complete in itself referring, as above stated, to some particular violation thereof; is it reasonable, therefore, to infer that the Legislature intended that one reading the Act should refer to some other section or paragraph thereof in order to gather its full scope and meaning? It might have been the intention of the draftsmen of the Act to include the words person or persons in this paragraph along with the words public or private carrier, but they were not so included, and if it was so intended their omission amounts to a *casus omissis.* It has been held by this Court that where it clearly appears that there is a *casus omissis* in a statute, the Court would be making law if it attempted to supply it. And it has further been held that the function of the Court is to interpret doubtful or obscure phrases and obscure language in a statute, but not to supply omitted provisions, however desirable it may be. *Fouracre et al. v. White,* 7 *Boyce* 25, 102 *A.* 186; State of Delaware, upon the relation of *Clarence A. Southerland, Attorney-General v. James A. Hart (Del. Super.),* 129 *A.* 691; *McKuski v. Henderickson,* 28 *N. E.* 650, 128 *N. Y.* 555.

In *Section* 7 provision is made for the searching of homes of persons, or other buildings or places, and the seizure and holding of liquors found therein; also vessels, bar fixtures and appurtenances apparently used in the sale, keeping or storing of such liquors contrary to law.

*Section* 9 provides for the public destruction of liquors found

upon the premises of persons, after a search of said premises, upon the conviction of said persons for a violation of this Act.

■ The consideration of *Section* 11 of the Act has been deferred until the last on account of its unusual provisions; it reads as follows:

"Whenever the Sheriff of any of the counties of this State where the sale of liquors is prohibited by law wholly or in part, or one of his deputies, or one of the constables in any of said counties, shall have reasonable cause to believe that any person is handling, carrying or bringing into such territory where the sale of liquor is prohibited, spirituous liquors, in quantity exceeding one quart, or malt liquors in quantity exceeding twelve pint bottles for any purpose whatsoever contrary to the provisions of this Act, it shall be the duty of said Sheriff, deputy sheriff or constable to arrest such person, which arrest may be made without warrant, if the offense is committed in the presence of such officer, and seize his baggage, and, also, seize his conveyance, if the person so arrested is traveling by conveyance, and the conveyance so seized shall be subject to the further order of the Court of competent jurisdiction, and take him before some justice of the peace in and for such county, and if the arrest was without warrant to make against him the charge of violating the provisions of this act."

This section provides for the arrest of a person suspected of carrying or bringing into those portions of this state where the sale of liquor is prohibited, spirituous or malt liquor, and seizure of the conveyance used by such person, but it fails to provide for the forfeiture or sale of said conveyance or to make any disposition of it; the words of the Act being:

"And the conveyance so seized shall be subject to the further order of the Court of competent jurisdiction."

Nothing whatever is said concerning the powers and duties of the Court in connection with a conveyance so seized. It certainly cannot be held that this section makes the provisions of *paragraph 3 of Section* 4 applicable to persons.

■ The language used by the Court in the case of *Commonwealth v. Gouger*, 21 *Pa. Super. Ct.* 217, seems very applicable to the case which demands our consideration:

"Where an enactment is plain and sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it so apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend the law, which is within the exclusive province of the Legislature."

We feel that *Paragraph 3 of Section 4* of the Act is not only plain and sensible, but complete and does not apply to conveyances used by individuals in transporting liquor.

■ It is not contended by the State that either the defendant, Rose, or the owner of the automobile were private carriers, and we are, therefore, not called upon to consider that question.

The next question to be considered is whether the Act is constitutional. It is contended that no provision being made for notice to the owner of the forfeiture of a conveyance used in the transportation of liquor, it deprives him of his property without due process of law.

*Article* 5 of the Amendments to the Constitution of the United States, deals with the question in the following language:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

*Article* 14 of said Amendments further provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The portions of our own Constitution which it is necessary to consider in connection with this contention are found in *Article* 1 thereof, the title of which is "Bill of Rights." *Section* 7 of said article provides:

"In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel; * * * he shall not be compelled to give evidence against himself, nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land."

*Section* 8 of the same article further provides:

"No person shall for any indictable offense be proceeded against criminally by information, * * * nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made."

*Section* 9 of the same article further provides:

"All Courts shall be open; and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land. * * *"

While all of the above-mentioned sections deal with the rights of persons, yet the subject-matter of each is separate and distinct. *Section* 7 defines the rights of an accused person in criminal prosecutions; *Section* 8 prohibits criminal proceedings against persons by information for an indictable offense, with certain exceptions; provides that no person shall be twice put in jeopardy of life or limb, or his property taken for public use without compensation; and *Section* 9 relates to suits and actions, specifying that the courts shall be open to every man for an injury to his reputation, person, or property. The original action in this case being a criminal one, *Section* 7 seems to be more applicable to the phase of the case now before the Court. We have heretofore quoted from that section, but it may be helpful to again quote the following words from the latter part thereof:

"Nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or the law of the land."

In the famous case of *Dartmouth College v. Woodward,* 4 *Wheat.* (*17 U. S.*) 518, 4 *L. Ed.* 629, Daniel Webster gave this explanation of the meaning of the words "the law of the land:"

"By the law of the land is most clearly intended the general law; a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment, is not, therefore, to be considered the law of the land."

The expression, "due process of law," as it appears in the Constitution of the United States, and expression, "law of the land," as used in many of the State Constitutions, have been generally held to mean the same; in fact, both terms have been held to be the equivalent of the expression, *"per legem terræ,"* as used in Magna Charta.

In England, such terms were used to secure the people against

the arbitrary power of the crown, while in this country they were used to protect them against legislative power. *Murray v. Hoboken L. & I. Co.*, 18 *How.* 272, 15 *L. Ed.* 372; *Missouri Pac. R. Co. v. Humes*, 6 *S. Ct.* 110, 115 *U. S.* 512, 29 *L. Ed.* 463; *Dent v. West Virginia*, 9 *S. Ct.* 231, 129 *U. S.* 114, 32 *L. Ed.* 623; *In re Clark*, 31 *A.* 522, 65 *Conn.* 17, 28 *L. R. A.* 242; *Millett v. People*, 7 *N. E.* 631, 117 *Ill.* 294, 57 *Am. Rep.* 869; *McKinster v. Sager*, 72 *N. E.* 854, 163 *Ind.* 671, 68 *L. R. A.* 273, 106 *Am. St. Rep.* 268; *People v. Dunn*, 52 *N. E.* 572, 157 *N. Y.* 528, 43 *L. R. A.* 247; *Parish v. East Coast Cedar Co.*, 45 *S. E.* 768, 133 *N. C.* 478, 98 *Am. St. Rep.* 718.

The words "law of the land," or "due process of law," when used in considering the property rights of individuals, mean summons or notice such as is ordinarily given upon the institution of a suit, due appearance of the parties in interest, pleading of the facts to issue and a determination thereof by a jury. In the case before the Court, the only legal action which has been instituted, is the arrest of Ellis Rose, charged with the unlawful transportation of liquor, his indictment on said charge by the Grand Jury and his plea of guilty thereto upon which he was sentenced. The State contends that when Rose pleaded guilty to the charge, the automobile which he was using was *ipso facto* forfeited to the State and it, therefore, had a right to sell it. It should not be forgotten, however, that the automobile was the property of Wolfe, the petitioner, and not Rose, and that Wolfe was in no way connected with the offense committed by him.

We, therefore, cannot agree with this contention. The statute makes no provision for notice to any person standing in the position of Wolfe, before any automobile belonging to him and used in the illegal transportation of liquor, can be forfeited by the state; by reason of that fact he is given no opportunity under the statute to be heard in defense of his rights.

These two things, notice and an opportunity to be heard, are conceded by the weight of authority to be essential to the validity of a statutory provision of this character. *Simon v. Craft*, 21 *S. Ct.* 836, 182 *U. S.* 427, 45 *L. Ed.* 1165; *Twining v.*

*New Jersey*, 29 *S. Ct.* 14, 211 *U. S.* 78, 53 *L. Ed.* 97; *Standard Oil Co. v. Missouri*, 32 *S. Ct.* 406, 224 *U. S.* 270, 56 *L. Ed.* 760, *Ann. Cas.* 1913D, 936; *Holden v. Hardy*, 18 *S. Ct.* 383, 169 *U. S.* 366, 42 *L. Ed.* 780; *Parish v. East Coast Cedar Co.;* 45 *S. E.* 768, 133 *N. C.* 478, 98 *Am. St. Rep.* 718; *Commonwealth v. Atlantic Coast Line*, 55 *S. E.* 572, 106 *Va.* 61, 7 *L. R. A.* (*N. S.*) 1086, 117 *Am. St. Rep.* 983, 9 *Ann. Cas.* 1124; *Ulman v. Baltimore*, 20 *A.* 141, 72 *Md.* 587; *Ex parte Wall*, 2 *S. Ct.* 569, 107 *U. S.* 265, 27 *L. Ed.* 552; *People v. Dickerson*, 129 *N. W.* 199, 164 *Mich.* 148, 33 *L. R. A.* (*N. S.*) 917, *Ann. Cas.* 1912B, 688; *Ives v. South Buffalo R. Co.*, 94 *N. E.* 431, 201 *N. Y.* 271, 34 *L. R. A.* (*N. S.*) 162, *Ann. Cas.* 1912B, 156.

A distinction must be made, however, with respect to that class of cases which prohibit the use of property in a manner injurious to the health, morals or safety of the public, or authorize the destruction of property when necessary in order to protect the welfare of the community.

An illustration of this is the tearing down of buildings in time of fire in order to prevent the spread thereof; or the killing of cattle infected with a contagious disease to prevent them from becoming a menace to the public health. *Blair v. Forehand*, 100 *Mass.* 136, 97 *Am. Dec.* 82, 1 *Am. Rep.* 94; *American Print Works v. Lawrence*, 23 *N. J. Law*, 590, 57 *Am. Dec.* 420; *State v. Robb*, 60 *A.* 874, 100 *Me.* 180, 4 *Ann. Cas.* 275; *Atlantic City v. France*, 70 *A.* 163, 75 *N. J. Law*, 910, 18 *L. R. A.* (*N. S.*) 156.

The National Prohibition Law, generally known as "The Volstead Act," at *Section* 10138½mm (*U. S. Comp. St. Ann. Supp.* 1923), makes the following provision in dealing with the question of the disposition of liquor seized while being transported:

"The Court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized."

It, therefore, clearly appears in this Act that the owner of an automobile or other conveyance seized while being used in the transportation of liquor would have an opportunity to establish his right to the possession of such property.

The difference between the provisions of this Act and those of our Act is immediately seen, the latter providing for the arbitrary forfeiture and sale of the conveyance used in transportation of liquor without giving the owner thereof any opportunity whatever to be heard.

It is not contended that the prosecution of Ellis Rose for the unlawful transportation of liquor, connected the petitioner, Wolfe, with that offense.

We fail to see how it can be successfully maintained that the statute provides for any notice to Wolfe of the intention of the State to forfeit and sell his automobile or that it gave him any opportunity to establish his title thereto, and, therefore, hold that to allow the State to forfeit and sell such automobile under existing circumstances would amount to a taking of property without due process of law.