This case has been before us for adjudication of one question or another several times, and is reported in 151 N.C. 620; 152 N.C. 314; 155 N.C. 242, and 155 N.C. 247. The defendant C. H. Miller, who was the commissioner appointed by the court to sell certain realty, has brought the case here by appeal from the final judgment, he having excepted to rulings of the court during the several stages of the proceedings in the court below, which was the proper method of procedure, as we held in Smith v.Miller, 152 N.C. 314, and 155 N.C. 242. He relies upon the following exceptions taken to the rulings of Judge Peebles:
1. Miller, as commissioner, was allowed certain items in his account, and to this ruling of the judge there was no exception, so that they must stand. But he was denied credit for other items, and to this ruling he has excepted. Among them is a claim he now makes for taxes and local assessments levied upon the property which he sold under orders of the court. It appears that at December Term, 1904, Judge Shaw made an order directing or authorizing Miller, as commissioner, "to pay all such taxes and street assessments as are and have been laid against any of the property described in the petition (for a sale of the land) (101) in this cause, same to be paid by him out of funds in his hands." No exception was taken to this order by any of the parties. The commissioner paid taxes and assessments since his qualification, to the amount of $2,018.76, some before the order was made and some afterwards, but not included in the amount presently to be mentioned. He also paid taxes and assessments then in the hands of the sheriff and city tax collector for collection, amounting to $3,131.78, the total amount of taxes and assessments thus paid being $5,735.44. The appellees contend that he is not entitled to credit for this payment of taxes and assessments: first, because, as Judge Peebles ruled, Judge Shaw had no power to make such an order; second, because the amount paid over and above the sum of $3,131.78, which was then due and collectible, was not embraced by the terms of the order; and, third, because the life tenant, Mrs. Elizabeth A. Smith, was liable for the taxes and assessments and they were not properly and legally chargeable upon the fund in the hands of Miller as commissioner.
We do not see why Judge Shaw could not make such an order. It was within the power and jurisdiction of the court to sell the land for partition, and in order to give a clear title it was certainly necessary *Page 84 
that the taxes, which constitute liens upon the land, should be paid. What would be the use of dividing the lands if they could be sold for taxes and the estate of the parties therein be forfeited or lost? This proceeding would, in such a case, be a vain and useless one. The commissioner may not have been under any obligation to pay the taxes and assessment without an order, but it seems to us, at least, that the order was not only a proper and legal one, but absolutely necessary for the protection of the interests of the parties. It was clearly to their advantage, and having profited by it, they will not now be heard to complain. He who is willing to reap the benefit should be made to take it with the burden which naturally and equitably goes with it. We think the court had the jurisdiction and the order was a just and lawful exercise of his power. Our opinion also is that the order of Judge Shaw embraces, and was intended to include, if we are to construe it by the words (102) employed, not only taxes and assessments then due and in the hands of the officers for collection, but all such as thereafter accrued, as well as those theretofore paid by Miller himself, while commissioner, for the estate. The language is, "all such taxes and assessments as are and have been levied." It would seem that these words are sufficient to take in the past, present, and future taxes and assessments. This meaning is not only apparent on the face of the order, but it would be hard to conclude that the court intended that only a part should be paid. If any of the taxes or assessments had been left unpaid, the property could just as well have been sold for that part as for the whole thereof. It is true, the statute provides for the payment of the taxes by the life tenant. But suppose she failed to pay them, either purposely or because she had no funds with which to pay them, must the property be sacrificed for this reason, and should we heed such an argument from the remaindermen, who are now enjoying the benefit which they derived solely from the payment? If the life tenant failed to pay, they may, perhaps, have an action against her, either at common law or under the statute, Revisal, sec. 2859, which reads as follows: "Every person shall be liable for the taxes assessed or charged upon the property or estate, real or personal, of which he is tenant for life. If any tenant for life of real estate shall suffer the same to be sold for taxes by reason of his neglect or refusal to pay the taxes thereon, and shall fail to redeem the same within one year after such sale, he shall thereby forfeit his life estate to the remainderman or reversioner. The remainderman or reversioner may redeem such lands, in the same manner that is provided for the redemption of other lands. Moreover, such remainderman or reversioner shall have the right to recover of such tenant for life all damages sustained by reason of such neglect or refusal on the part of *Page 85 
such tenant for life. If any tenant for life of personal property suffer the same to be sold for taxes by reason of any default of his, he shall be liable in damages to the remainderman or reversioner." By this provision of the law the remainderman or reversioner may redeem from a tax sale; but must he wait until there is a sale and the accumulation of costs and expenses, before he exercises the right? If it is inevitable that the land will be sold for the tax, why should he (103) wait? The law evidently means, that if the life tenant does not pay, and thereby exposes the land to sale, he may intervene and prevent a sale by paying the tax, and for the same reason that he can redeem from a tax sale already made. It may be that he could do so without the aid of the statute. Revisal, sec. 2857, provides for the payment of all taxes assessed upon real property ordered to be sold in judicial proceedings and remaining unpaid, and also for the payment of such as may be required to redeem the same, if it has been sold for taxes, and it then provides that payment of the taxes shall be made out of the proceeds of sale. Sections 2857 and 2858 provide also for the payment of taxes assessed upon real estate by trustees, mortgagees, and lienors. The object of the law seems to be, not only to preserve the property for the benefit of all interested parties, but to pass a clear title to the purchaser when it is sold. This exception is sustained, and Miller will be allowed the full amount of taxes and assessments paid by him.
2. We also think that Miller, as commissioner, should be allowed commissions at least to the amount that they were ordered to be retained by him, which appears to be $1,400. There was no exception to this order at the time, and Judge Shaw is presumed to have made it upon full consideration of all the facts and circumstances, and while we do not decide that the order was not reviewable by Judge Peebles, as it is not necessary to do so, we do not see why it should not stand as it was made. The learned judge, in overruling it, may have been influenced, at least to some extent, by the erroneous view taken of some of the questions we are now considering. This exception to the ruling disallowing commissions of $1,400 is sustained.
3. Miller, commissioner, disbursed a large sum in the manufacture of concrete blocks for use in the construction of the new hotel building in Asheville. Judge Peebles refused to allow him any credit for this expenditure, and ordered his successor, Mr. Whitson, to sell the blocks and apply the net proceeds as a credit on the judgment against Miller in this case, after finding as a fact that the blocks were manufactured by Miller "in his business and are not the property of the Smith estate, but the property of Miller, as he could not sell them to himself as commissioner. He is not credited with them, but they (104) *Page 86 
are ordered to be sold." If they did not belong to the "Smith estate," but to Miller, it follows that the court had no right to order a sale of them. They had not been levied upon or seized in execution for any debt due by Miller to the "Smith estate." It is clear to us that the sale of them was not only irregular, but void, and Miller is entitled to have, at least, the proceeds or the amount thereof paid to him. This was said in the argument to be $60. He is also entitled, at least, to the proceeds of any other property of his which has been sold in like manner.
None of the exceptions we have considered are covered by our first ruling in the case, that the court did not have jurisdiction to authorize the building of the hotel. They relate entirely to other matters clearly within the cognizance of the court. The other exceptions of defendant are overruled.
It may be that some of the amounts are not correctly stated, and if they are not, the court below may refer the matter for a finding as to the true amounts, unless the parties can agree as to them.
The judgment of the Superior Court will be modified in accordance with this opinion.
Error.
(104)