JOHN HORACE EASON AND WIFE, RUTH EASON; LOUIZA TILTON AND HUSBAND, LITMAN TILTON; LOSSIE BELLE BRADSHAW AND HUSBAND, ERNEST BRADSHAW; JAMES A. EASON AND WIFE, TREASSIE EASON; WOODROW EASON AND WIFE, JOANNIE EASON (ORIGINAL PARTIES PLAINTIFF) AND (THE FOLLOWING ADDITIONAL PARTIES PLAINTIFF); GUY ABNER EASON (SON OF B. F. EASON, DECEASED); THOMAS EDWARD EASON (SON OF B. F. EASON, DECEASED); HELEN LUCILLE E. THOMAS (DAUGHTER OF B. F. EASON, DECEASED); JAMES FARRIOR EASON (SON OF B. F. EASON, DECEASED); AND DRUCILLA PRICE BEATY (DAUGHTER OF MINNIE VICTORIA EASON PRICE), v. MRS. ALMA SPENCE, ERSULA SPENCE AND NINA ANN SPENCE, THE LAST TWO BEING MINORS; AND MRS. ALMA SPENCE, GENERAL GUARDIAN OF ERSULA SPENCE AND NINA ANN SPENCE.

(Filed 8 November, 1950.)

**1. Constitutional Law § 20a—.**

No person can be deprived of his property except by his own consent or the law of the land, which term is synonymous with due process of law. Constitution of N. C., Art. I, Sec. 17.

**2. Constitutional Law § 21—**

Due process of law imports notice and an opportunity to be heard or defend in a regular proceeding before a competent tribunal.

**3. Taxation § 40g——**

In proceedings to sell lands for taxes, the court, even though it be a court of general jurisdiction, exercises a limited statutory authority, and therefore it must appear by the recitals of the record itself that the court not only had authority over the subject matter but also that it acquired jurisdiction of the parties in some manner recognized by law.

**4. Estates § 9d——**

While it is the duty of the life tenant to pay the taxes assessed upon the land, the taxes constitute a lien upon the entire fee, and the interest of the remaindermen as well as that of the life tenant is subject to sale for the satisfaction of the lien.

**5. Taxation § 40b——**

Where a proceeding to foreclose a tax sale certificate under Chap. 260, Public Laws of 1931, is instituted solely against the life tenant and her husband, the remaindermen who are neither made parties nor served with summons are not before the court notwithstanding that notice to "all persons claiming any interest" was posted at the courthouse door and published in a general advertisement in some newspaper in the county, and therefore a sale of such lands pursuant to such proceeding does not pass the interest of the remaindermen.

**6. Taxation § 41——**

Where foreclosure of a tax sale certificate is had in proceedings in which the life tenant alone is made a party, the commissioner's deed conveys only the interest of the life tenant, but the sale is for the full amount of the tax lien and necessarily extinguishes it, and therefore the remaindermen are under no necessity to attempt redemption subsequent to the sale in order to protect their interests.

**7. Taxation § 40g——**

Foreclosure of a tax sale certificate in proceedings in which the life tenant alone is a party is void as to the remaindermen for want of jurisdiction and the remaindermen may attack it collaterally.

**8. Adverse Possession § 13a——**

Adverse possession does not begin to run in favor of a person taking actual possession under color of title or claim of right until such possession gives rise to a cause of action in favor of the true owner.

**9. Same: Adverse Possession § 4i——**

Plaintiffs claimed under foreclosure of a tax sale certificate in a proceeding instituted solely against the life tenant and in which the remaindermen were neither parties nor brought before the court in any manner sanctioned by law. *Held:* While commissioner's deed of foreclosure did not affect the interest of the remaindermen, it did convey the interest of the life tenant, and plaintiffs' were entitled to possession during the continuance of the life estate, which possession could not be adverse to the remaindermen until the death of the life tenant gave them legal power to sue. G.S. 1-38.

**10. Estates § 9f—**

The forfeiture of a life estate for nonpayment of taxes, G.S. 105-410, is not automatic, but the statute contemplates an adjudication of forfeiture by a court of competent jurisdiction in a proceeding in which the alleged delinquent life tenant has notice and an opportunity to be heard in order to satisfy the requirements of due process of law.

**11. Adverse Possession § 13a—**

Persons in possession pursuant to foreclosure of a tax sale certificate conveying only the title of the life tenant may not maintain that their possession is adverse to the remaindermen on the ground that the life tenant's failure to pay taxes forfeited her estate to the remaindermen and thus gave them immediate right to possession, since such forfeiture under G.S. 105-410 is not automatic but must be judicially determined in an appropriate proceeding. G.S. 1-38.

APPEAL by defendants from *Parker, J.,* at the June Term, 1950, of LENOIR.

Civil action in ejectment involving title to land in Moseley Hall Township, Lenoir County, heard upon a case agreed.

The case agreed discloses these facts:

1. On 14 January, 1920, J. T. Taylor and his wife, Bessie Taylor, made a deed, which was forthwith duly registered, conveying the land in suit to Victoria Eason for life, with remainder in fee to her seven children, B. F. Eason, John Horace Eason, Minnie Victoria Eason Price, Louiza Tilton, Lossie Belle Bradshaw, James A. Eason, and Woodrow Eason. B. F. Eason and Minnie Victoria Eason Price died intestate during the life of their mother. B. F. Eason was survived by four children, Guy Abner Eason, Thomas Edward Eason, Helen Lucille E. Thomas, and James Farrior Eason. Minnie Victoria Eason Price left an only daughter, Drucilla Price Beaty. The living children of Victoria Eason, the surviving children of B. F. Eason, and the surviving child of Minnie Victoria Eason Price and their spouses are the plaintiffs in this action.

2. The land was listed for taxes in the name of A. M. Eason, the husband of the life tenant, Victoria Eason, for 1927, and the taxes assessed upon it by Lenoir County for that year were not paid by Victoria Eason or any other person. The Sheriff of Lenoir County sold the land for such taxes, and issued a certificate of sale to Lenoir County, the purchaser at the tax sale. Victoria Eason did not redeem the land.

3. Subsequent to the Sheriff's sale, Lenoir County, as plaintiff, sued "A. M. Eason and his wife, Mrs. A. M. Eason, defendants" in the Superior Court of Lenoir County to foreclose the tax sale certificate. Only three parts of the record in this action can be found. These are an interlocutory judgment of foreclosure entered by the Clerk on 14 September, 1931; a report of sale made by Thomas J. White, Commissioner, on

28 March, 1932; and a final decree entered by the Clerk on 25 April, 1932. The interlocutory judgment of foreclosure was rendered by default. It recites "that summons herein was duly served, as required by law, upon the defendants." It adjudges that they are indebted to Lenoir County in the "sum of $333.86 with interest . . . on account of taxes lawfully assessed and levied upon the property of the defendants for the years set forth in the complaint," and that such debt constitutes a lien upon the land in controversy in the present action. It further adjudges that "the defendants and all persons claiming under them shall be forever barred and foreclosed of all equity of redemption" in the land in the event "the foregoing taxes and interest thereon" are not paid . . . on or before 16 November, 1931, and that "any persons claiming any interest in the land . . . shall be forever barred and foreclosed of any . . . interest or claim" in it unless they "set up their claims within six months from date of advertisement in this cause." It appoints Thomas J. White as commissioner, and directs him "to sell said land at public auction at the courthouse door in Kinston, N. C., to the highest bidder, for cash, after having posted a notice of said sale at the courthouse door and three other public places in Lenoir County, thirty days prior to said sale, and by publishing a notice thereof once a week for four successive weeks immediately preceding said sale in some newspaper published in Lenoir County." The report of sale recites that Thomas J. White, Commissioner, sold the land at public auction to Lenoir County for "the sum of $368.86 and taxes accrued since 1927" after advertisement in the manner specified in the interlocutory judgment of foreclosure. The final decree recites that "notices of said sale were duly posted and published as required by statute" and that "no exceptions or raised bid has been made in the time allowed by law." It orders Thomas J. White, Commissioner, to collect the bid made by Lenoir County at the foreclosure sale, and "to make and deliver a deed in fee simple for the said lands to Lenoir County, its successors and assigns." On 26 April, 1932, Thomas J. White, Commissioner, delivered his deed to Lenoir County. Such deed recited that the bid had been paid in full, and undertook to convey to Lenoir County, "its successors and assigns forever all the right, title, interest, and estate of the defendants named in the . . . action, and any and all other persons bound by the judgment in such action" in the land in dispute.

4. At the time the proceedings were had in the tax foreclosure suit, the plaintiffs, Guy Abner Eason, Thomas Edward Eason, Helen Lucille E. Thomas, and James Farrior Eason, resided with their father, B. F. Eason, in Duplin County, North Carolina. All of the other plaintiffs were living in Lenoir County, North Carolina.

5. On 11 March, 1936, Lenoir County made a deed sufficient in form to convey the land in controversy to Levert L. Smith in fee simple, and

on 30 September, 1941, Levert L. Smith and his wife, Geneva Smith, made a deed sufficient in form to transfer such land to H. D. Spence in fee simple.

6. H. D. Spence died intestate on 12 December, 1946, survived by his widow, Alma Spence, and two children, Ersula Spence and Nina Ann Spence, who are the defendants in this action.

7. The land in suit was vacant from the date of the deed from Thomas J. White, Commissioner, to Lenoir County, until the date of the deed from Lenoir County to Levert L. Smith.

8. Ever since 11 March, 1936, however, the defendants and those under whom they claim, to wit, H. D. Spence and Levert L. Smith, have been in the actual and exclusive possession of the land in dispute under known and visible lines and boundaries, claiming to be the absolute owners of the same under the Commissioner's deed and the *mesne* conveyances mentioned above.

9. Victoria Eason died in November, 1949, having outlived her husband, A. M. Eason, by three years.

10. This action was begun on 31 December, 1949. The pleadings put the title and the right to possession of the property in issue. No previous action was brought by the plaintiffs, or any of them, to recover the land, or to set aside the tax foreclosure suit, or any proceeding had in it. Moreover, the plaintiffs have never attempted to redeem the land from the alleged tax sale.

Judge Parker made these legal conclusions on the case agreed: That the proceedings had in the tax foreclosure action were not binding on the plaintiffs because "the remaindermen were not made parties and were not served with summons"; "that the deed from Thomas J. White, Commissioner, to Lenoir County, and the deed from Lenoir County to Levert L. Smith, and the deed from Levert L. Smith and wife, Geneva Smith, to H. D. Spence, were tacked-to, and were a continuation of the title of Victoria Eason, the life tenant"; and "that no statute of limitation began to run 'against the plaintiffs' until the death of Victoria Eason in November, 1949." Judge Parker thereupon entered judgment that the plaintiffs own the land in dispute, and are entitled to its immediate possession; and the defendants excepted and appealed, assigning errors.

*Wallace & Wallace and J. Faison Thomson for plaintiffs, appellees.*
*Whitaker & Jeffress and George B. Greene for defendants, appellants.*

ERVIN, J.   Under Article I, Section 17, of the State Constitution, no person can be deprived of his property except by his own consent or the law of the land. The law of the land and due process of law are interchangeable terms. *S. v. Ballance,* 229 N.C. 764, 51 S.E. 2d 731, 7 A.L.R.

2d 407. The significance of the law of the land in its procedural aspect is laid bare by a famous phrase used by Daniel Webster in his argument in the *Dartmouth College case.* "By the law of the land is most clearly intended the general law, a law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial." *The Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629. "Its essential elements are notice and opportunity to be heard or defend, before a competent tribunal, in an orderly proceeding adapted to the nature of the case, which is uniform and regular, and in accord with established rules which do not violate fundamental rights." 16 C.J.S., Constitutional Law, section 569; *Surety Co. v. Sharpe, ante,* 98, 59 S.E. 2d 593.

This question arises at the threshold of the appeal: Were the remaindermen brought before the court in the proceeding to foreclose the tax sale certificate?

In any judicial proceeding to sell property for unpaid taxes, the court "must have that authority of law for the purpose, which is called jurisdiction. This consists in, first, authority over the subject matter, and, second, authority over the parties concerned. The first comes from the statutory law, which designates the particular proceeding as one of which the court may take cognizance when the parties are properly before it; the second comes from the proper institution of proceedings, and the service of process upon the parties concerned, or something which is by the statute made equivalent to such service. Concerning jurisdiction of the subject-matter, it is only necessary to observe that it must come wholly from the Constitution or statutes of the State; the common law giving to the courts no authority in such cases. Moreover, that which is conferred is a special and limited jurisdiction. The importance of this fact appears in that familiar principle that nothing is taken by intendment in favor of a court of special and limited jurisdiction, but it must appear, by the recitals of the record itself, that the facts existed which authorized the court to act, and that in acting the court has kept within the limits of its lawful authority. This principle is applicable to the case of a court of general jurisdiction, which in the particular case is exercising this peculiar special and limited authority, as well as to the case of special courts created for such special and limited authority only." Cooley: The Law of Taxation (4th Ed.), section 1401. See, also, in this connection: *Harshaw v. Taylor,* 48 N.C. 513; *Jennings v. Stafford,* 23 N.C. 404.

Although the remaindermen were residents of North Carolina and their interest in the land was disclosed by the public records of Lenoir County at the time of the proceeding to foreclose the tax sale certificate, they were not named as parties in such proceeding. Furthermore, it

must be held that they were not notified of the proceeding by summons, for the only recital of the record in the proceeding relating to the service of summons is "that summons herein was duly served . . . upon the defendants," that is to say, the life tenant, Victoria Eason, and her husband, A. M. Eason.

Since they were not made parties to the proceeding or served with summons in it, the remaindermen cannot be said to have been before the court in the proceeding.

This observation is sound even if we accept as valid the contention of the defendants that the case agreed establishes this twofold proposition: (1) That the foreclosure proceeding was brought under Chapter 260 of the Public Laws of 1931 rather than under Chapter 221 of the Public Laws of 1927 or Chapter 334 of the Public Laws of 1929; and (2) that notice was posted at the courthouse door and published in a general advertisement in some newspaper in Lenoir County in compliance with section 5 of Chapter 260 of the Public Laws of 1931, calling upon "all . . . persons claiming any interest in the subject matter of the action" other than those actually "served with process as in civil actions" to appear, present, and defend their claims. See Michie's North Carolina Code of 1931, section 8037.

Despite some *dicta* to the contrary in *Orange County v. Wilson,* 202 N.C. 424, 163 S.E. 113, it is now well established by authoritative decisions that the provisions of section 5 of Chapter 260 of the Public Laws of 1931 relating to the posting of notices and the making of general advertisements as a procedure for bringing unnamed claimants before courts in tax foreclosure suits offend the constitutional guaranty of due process of law because such procedure does not afford the claimants reasonable notice and reasonable opportunity to be heard. *Johnston County v. Stewart,* 217 N.C. 334, 7 S.E. 2d 708; *Hill v. Street,* 215 N.C. 313, 1 S.E. 2d 850; *Beaufort County v. Mayo,* 207 N.C. 211, 176 S.E. 753; *Buncombe County v. Penland,* 206 N.C. 299, 173 S.E. 609; *Guy v. Harmon,* 204 N.C. 226, 167 S.E. 796.

We deem it advisable to observe, in passing from this phase of the controversy, that the case at bar is readily distinguishable from *Orange County v. Wilson, supra,* where the trustees of the claimants "were parties defendant and were served with process." Besides, it is unlike *Orange County v. Jenkins,* 200 N.C. 202, 156 S.E. 774, which was brought under Chapter 334 of the Public Laws of 1929, and involved the validity of a tax foreclosure sale as against Andrew Jenkins, who listed the property for taxes in his character as owner, was designated by name as defendant in the tax foreclosure suit, and was "duly and regularly served" with summons by publication in it.

This brings us to this inquiry: Where only the life tenant is made a party to a judicial proceeding to foreclose a tax sale certificate, and the remaindermen are not before the court, does a sale of land pursuant to such proceeding pass the interest of the remaindermen as well as the life estate to the purchaser? This question must be answered in the negative, for the very fundamental reason that under the law of the land clause of the State Constitution a judgment of a court cannot bind a person unless he is brought before the court in some way sanctioned by law and afforded an opportunity to be heard in defense of his right. *Beaufort County v. Mayo,* 207 N.C. 211, 176 S.E. 753; *Jennings v. Stafford,* 23 N.C. 404; *Hamilton v. Adams,* 6 N.C. 161.

It was the duty of Victoria Eason, as life tenant, to pay the taxes assessed upon the land. C.S. 7982, now G.S. 105-410. Nevertheless, such taxes constituted a lien upon the entire fee. In consequence, the interest of the remaindermen as well as that of the life tenant was subject to sale for the satisfaction of the lien. The statute then in force provided, however, that such sale could only be made under the judgment of the court in a judicial proceeding in the nature of an action to foreclose a mortgage. Michie's North Carolina Code of 1931, section 8037.

The life tenant, Victoria Eason, and her husband, A. M. Eason, were the only defendants in the action to foreclose the tax sale certificate. The remaindermen were not made parties to the action, or brought before the court in any way sanctioned by law. These things being true, the sale and the Commissioners' deed conveyed to the purchaser no more than the interest of Victoria Eason, to wit, the life estate. The interest of the remaindermen was not affected by the judgment in the tax foreclosure suit, or by any proceeding had under it. *Guy v. Harmon,* 204 N.C. 226, 167 S.E. 796; *Williams v. Hedrick,* 37 C.C.A. 552, 96 F. 657; *Rissberger v. Brown,* 120 Ky. 142, 85 S.W. 731; *City of Louisville v. Kohnhorst,* 25 Ky. L. Rep. 532, 76 S.W. 43; *Falvey v. Hicks,* 315 Mo. 442, 286 S.W. 385; *Bradley v. Goff,* 243 Mo. 95, 147 S.W. 1012; *Allen v. De-Groodt,* 98 Mo. 159, 11 S.W. 240, 14 Am. St. Rep. 626.

Some subsidiary observations are proper at this point. Although the interest of the life tenant only passed by the Commissioner's deed, the sale was for the full amount of the tax lien, and necessarily extinguished the lien on the interest of the remaindermen. Hence, they were under no necessity to attempt a redemption of the land subsequent to the sale in order to protect their own interest. *Williams v. Hedrick,* 37 C.C.A. 552, 96 F. 657. Since the judgment in the proceeding to foreclose the tax sale certificate is void as to them under the law of the land clause, the remaindermen may impeach it in this action of ejectment. A judgment void for want of jurisdiction is open to attack in a collateral proceeding. *Powell v. Turpin,* 224 N.C. 67, 29 S.E. 2d 26.

The defendants insist, however, that they now own the land in dispute even if the Commissioner's deed and the *mesne* conveyances did not transfer to them the rights of the plaintiffs. They say that in any event the deeds are good as color of title to the entire fee; that they and those under whom they claim have occupied the land since 11 March, 1936, asserting absolute ownership under their deeds; and that by reason thereof they have acquired a good title by adverse possession under color of title under the statute of limitation set forth in G.S. 1-38.

We now reach this last question: Have the defendants acquired a good title to the land in controversy by seven years' adverse possession under color of title?

A statute prescribing the length of time during which an adverse possession of land must be maintained in order for it to ripen into title will not begin to run until these two things concur: (1) The claimant has actual possession of the land under color of title, or claim of right; and (2) the possession of the claimant gives rise to a cause of action in favor of the true owner. *Everett v. Newton,* 118 N.C. 919, 23 S.E. 961. In other words, an adverse possession will never run against the owner of an interest in land unless he has legal power to stop it.

This consideration supports the rule that prior to the death of the life tenant a person occupying land under a deed effective only as to the life interest does not hold adversely to the remainderman or reversioner. *Barnhardt v. Morrison,* 178 N.C. 563, 101 S.E. 218; *Norcum v. Savage,* 140 N.C. 472, 53 S.E. 289; *Smith v. Proctor,* 139 N.C. 314, 51 S.E. 889, 2 L.R.A. (N.S.) 762; *Huneycutt v. Brooks,* 116 N.C. 788, 21 S.E. 558.

The two estates, the life estate of Victoria Eason and the remainder in her children, were created twelve years before the final judgment in the tax foreclosure suit. Although the Commissioner's deed did not pass the remainder interest of the plaintiffs, it did convey the life estate of Victoria Eason. This being so, the defendants and those under whom they claim occupied the land under conveyances which actually vested in them the interest of the life tenant. Manifestly, their possession was not adverse to the plaintiffs during the life of Victoria Eason. While they held the interest of the life tenant, their occupation was lawful, and did not subject them to an action by the plaintiffs. Their possession became wrongful, however, at the death of the life tenant, and the plaintiffs thereupon acquired a right to sue them for the land.

For these reasons, the adverse possession of the defendants and those under whom they claim did not set the statute of limitation in motion against the plaintiffs until the expiration of the life estate by the death of Victoria Eason. As this event did not occur until November, 1949, the possession of the defendants and those under whom they claim has not ripened into a good title under G.S. 1-38.

In reaching this conclusion, we have not ignored the argument of the defendants based on section 7982 of the Consolidated Statutes, which is now codified as G.S. 105-410. This section is as follows: "Every person shall be liable for the taxes assessed or charged upon the property or estate, real or personal, of which he is tenant for life. If any tenant for life of real estate shall suffer the same to be sold for taxes by reason of his neglect or refusal to pay the taxes thereon, and shall fail to redeem the same within one year after such sale, he shall thereby forfeit his life estate to the remainderman or reversioner. The remainderman or reversioner may redeem such lands, in the same manner that is provided for the redemption of other lands. Moreover, such remainderman or reversioner shall have the right to recover of such tenant for life all damages sustained by reason of such neglect or refusal on the part of such tenant for life."

The defendants advance this argument: That Victoria Eason automatically forfeited her life estate to the plaintiffs under the statute by permitting the land to be sold for the nonpayment of the 1927 taxes, and by failing to redeem it within one year after the sale; that the plaintiffs thus acquired a fee simple estate in the land, with an inseparable right to its possession, immediately upon the occurrence of the automatic forfeiture of the life estate; and that by reason of these matters Levert L. Smith, one of the persons under whom the defendants claim, committed an actionable wrong against the right of possession of the plaintiffs on 11 March, 1936, when he took possession of the land, thereby setting the statute of limitation now embodied in G.S. 1-38 in motion against the plaintiffs.

This argument lacks validity because the premise on which it rests, *i.e.,* that the statute worked an automatic forfeiture of the interest of the life tenant, is untenable. Although the statute does not expressly so provide, it must be interpreted to contemplate a judicial determination of the forfeiture by a court of competent jurisdiction in a proceeding of which the alleged delinquent life tenant shall have notice and in which he shall be given an opportunity to be heard. *Land Co. v. Board of Education,* 101 N.C. 35, 7 S.E. 573; *Phelps v. Chesson,* 34 N.C. 194. A contrary construction of the statute would render the provision for forfeiture violative of Article I, Section 17, of the State Constitution; for the forfeiture of the property of one person and the vesting of the title thereto in another for tax delinquency by mere legislative declaration is the taking of property without due process of law. *Lumber Co. v. Lumber Co.,* 135 N.C. 742, 47 S.E. 757; *Parish v. Cedar Co.,* 133 N.C. 478, 45 S.E. 768, 98 Am. St. Rep. 718. This holding is implicit in all of the decisions relating to the statute, except *Sibley v. Townsend,* 206 N.C. 649, 175 S.E. 107, where the constitutional question was not

broached by counsel or considered by the Court. *Crandall v. Clemmons,* 222 N.C. 225, 22 S.E. 2d 448; *Cooper v. Cooper,* 221 N.C. 124, 19 S.E. 2d 237; *Cooper v. Cooper,* 220 N.C. 490, 17 S.E. 2d 655; *Meadows v. Meadows,* 216 N.C. 413, 5 S.E. 2d 128; *Rigsbee v. Brogden,* 209 N.C. 510, 184 S.E. 24; *Bryan v. Bryan,* 206 N.C. 464, 174 S.E. 269; *Hutchins v. Mangum,* 198 N.C. 774, 153 S.E. 409; *Tucker v. Tucker,* 108 N.C. 235, 13 S.E. 5; *Smith v. Miller,* 158 N.C. 98, 73 S.E. 118.

The life estate of Victoria Eason was not forfeited to the plaintiffs, for it was not judicially determined in an appropriate proceeding that any event giving rise to the alleged forfeiture occurred.

In closing, we deem it proper to call attention to *Crandall v. Clemmons,* 222 N.C. 225, 22 S.E. 2d 448, a case arising under Chapter 310 of the Public Laws of 1939, where it is said that "under our present tax foreclosure laws, life estates are no longer forfeited under the provisions of section 7982 of the Consolidated Statutes of North Carolina." The sound reasoning underlying the *Crandall case* applies with like force to the statute involved in the instant case, which also provided that a tax lien can be enforced only by a judicial proceeding in the nature of an action to foreclose a mortgage.

The judgment is
Affirmed.