McDONALD'S CORPORATION, PLAINTIFF, AND LACY H. THORNBURG, AT-
TORNEY GENERAL OF NORTH CAROLINA, INTERVENOR v. WILLIAM
D. DWYER AND WIFE, HESTER T. DWYER; JERONE C. HERRING, TRUSTEE
FOR BRANCH BANKING AND TRUST COMPANY; BRANCH BANKING AND TRUST
COMPANY; AND JONI-SON ENTERPRISES, INC., DEFENDANTS

No. 913SC1171

(Filed 20 July 1993)

**Railroads § 3 (NCI3d) — abandoned railroad easements — presumptive
ownership — application of statute to fee simple landowners
in possession of disputed property — statute unconstitutional**

 N.C.G.S. § 1-44.2 which is entitled "Presumptive owner-
ship of abandoned railroad easements" is unconstitutional as
it applies to fee simple landowners in possession of disputed
property in that it fails to provide them with adequate notice,
an opportunity to be heard, and with just compensation.

**Am Jur 2d, Railroads §§ 82-86.**

 Appeal by defendants from order entered 22 October 1991
by Judge David E. Reid, Jr., in Craven County Superior Court.
Heard in the Court of Appeals 30 November 1992.

 *Moore & Van Allen, by Joseph W. Eason, Denise Smith Cline
and A. Bailey Nager, for defendants-appellants William D.
Dwyer, Hester T. Dwyer, Jerone C. Herring as Trustee, and
Branch Banking and Trust Company.*

 *Ward and Smith, P.A., by Kenneth R. Wooten and Bonnie
J. Refinski-Knight, for plaintiff-appellee.*

 *Attorney General Lacy H. Thornburg, by Special Deputy At-
torney General James C. Gulick, for the State, as Intervenor.*

JOHNSON, Judge.

 On 19 June 1987, the North Carolina Legislature ratified North
Carolina General Statutes § 1-44.2 which is entitled "Presumptive
ownership of abandoned railroad easements." The Statute provides
in pertinent part:

 (a) Whenever a railroad abandons a railroad easement, all right,
 title and interest in the strip, piece or parcel of land con-
 stituting the abandoned easement shall be presumed to be

vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement.

(b) Persons claiming ownership contrary to the presumption established in this section shall have a period of one year from the date of enactment of this statute or the abandonment of such easement, whichever later occurs, in which to bring any action to establish their ownership. The presumption established by this section is rebuttable by showing that a party has good and valid title to the land.

Plaintiff-appellee McDonald's Corporation filed a complaint on 19 June 1990, stating that it owns in fee simple and possesses a tract of land located adjacent to an abandoned railroad easement and requesting that it be declared the owner in fee simple of and entitled to a portion of the abandoned railroad easement. An amended complaint was filed, seeking damages for lost rents and profits and for waste committed by the defendants, William D. Dwyer and wife, Hester T. Dwyer, Jerone C. Herring, trustee for Branch Banking and Trust Company, Branch Banking and Trust Company, and Joni-Son Enterprises. By way of their answer, defendants contend that McDonald's is not entitled to the property pursuant to the Statute because the Statute is unconstitutional, failing to provide notice or a hearing and effecting the taking of land without just compensation.

On 20 May 1991, the Dwyers, Herring and BB&T filed a motion for summary judgment. McDonald's filed a motion for partial summary judgment on 21 May 1991, seeking possession of and title to the property and ejectment of the Dwyers and Joni-Son from the property. Upon notification of the constitutional issue involved in the case at bar, the Attorney General moved for and received the right to intervene in this action for the purpose of defending the constitutionality of the Statute. In his summary judgment order of 27 October 1991, Judge Reid determined that the Statute was constitutional and that McDonald's was entitled to possession of the land. Defendants filed timely notice of appeal.

The railroad easement at issue in the case at bar came into existence in the late 1800's when the Seaboard Coastline acquired easements from landowners who lined the proposed railway. Eventually, many of these landowners sold their land to the Pepsi-Cola

McDONALD'S CORP. v. DWYER

[111 N.C. App. 127 (1993)]

Company before it filed bankruptcy on 17 February 1923. Also on 17 February 1923, the Craven Holding Corporation was incorporated in the State of Virginia for the purpose of purchasing, holding title to and making disposition of real property owned by the bankrupt Pepsi-Cola Company. The Corporation came to possess property on both sides of the Seaboard Coastline Railroad easement and the land under the railroad easement. At that time, the Railroad had an active railroad line on the property. On 24 October 1923, the Corporation disposed of by deed, all of its holdings in Craven County. These conveyances did not provide a specific description of the land conveyed from the Corporation, but each referenced the Plat Map at Book One, page 59.

On 31 May 1931, the Corporation was dissolved by operation of law. The Corporation had been inactive after making these conveyances, but was not officially dissolved until 1931, when dissolution came after the Corporation failed to pay taxes in the State of Virginia.

By 1984, the Seaboard Coastline Railroad had discontinued using the railroad tracks and the easement. The formal declaration of abandonment of easement was signed and recorded on 27 August 1987. An amended declaration of abandonment of easement was signed and recorded on 3 November 1987.

Mr. Zachary Taylor, the Dwyers' predecessor in title, believing that the title to the land under the railroad easement passed by operation of law to the shareholders of the dissolved Craven County Holding Company, sought the heirs of the Corporation in order to buy their rights to the land under the easement. Upon locating Herbert T. Southgate, Taylor obtained a "title" to the abandoned railroad easement by telling Southgate that Southgate owned property in New Bern. The property was purchased for one hundred dollars and a portion of the easement was conveyed to defendants' predecessors.

Simultaneously, Earnest C. Richardson, III was appointed ancillary receiver in North Carolina to marshall the assets of the Craven County Holding Corporation, which were still alleged to exist. Following the appointment of his receivership, Richardson filed suit against those who acquired "title" to portions of the abandoned railroad easement. Defendants to this law suit included P. M. Stewart, predecessor in title to the Dwyers; BB&T, as lender to P. M. Stewart; and Herring, in his capacity as trustee under the BB&T

deed of trust. The complaint challenged titles to property that were received and then reconveyed by Taylor. The title to the land at issue in this case was included in the case, 88CVS149.

In March 1987, construction of the restaurant on the property at issue began. In April 1987, House Bill 876 was introduced in the Legislature. Construction of the restaurant was stopped until BB&T obtained title insurance to cover claims as to the railroad easement. After coverage was secured, construction resumed and was completed in May 1987.

In June 1987, House Bill 876 was ratified and became North Carolina General Statutes § 1-44.2. Taylor and Richardson continued to obtain title to the abandoned easement by filing claims rebutting the presumption that the easement from the center line belonged to adjacent landowners.

Before Taylor began to file claims to rebut the presumption in the Statute, he wrote to defendant Dwyer c/o Dan-Par Investments in April 1988 to invite Dwyer to coordinate efforts with Taylor to secure the title to portions of the abandoned easement in accordance with the Statute. The Dwyers did not accept this invitation nor did they attempt to rebut the presumption by individual efforts.

Taylor filed suits against the adjacent landowners, within the prescribed time, asserting that he had title to the abandoned easement. In each suit, Taylor alleged that he owned those portions of the property that were formally owned by the Seaboard Coastline Railroad; that he owned the property to the exclusion of any claim under the Statute; and that the Statute was unconstitutional. Taylor did not bring suit against McDonald's or any of the defendants because he had already conveyed the property now at issue. Defendants, however, failed to bring suit within one year of the enactment of the Statute or within one year of the abandonment as required by Statute.

On 3 May 1988, Richardson, as receiver of the Craven County Corporation in Craven County, North Carolina, filed suit against defendants which included Dan-Par Investments, Herring, BB&T, McDonald's and Zachary Taylor. Case No. 88CVS977. Richardson specifically referenced the Statute as his claim of action. The aforementioned defendants were dismissed from the action for lack of personal jurisdiction. The remaining parties reached a settlement dissolving Richardson's receivership; entering summary judgment

in favor of Taylor; and providing that Richardson would give notice of appeal from the summary judgment but would dismiss the appeal following an exchange of deeds and consummation of the settlement agreement. Case No. 88CVS977 was dismissed by Richardson with prejudice.

On appeal, defendants-appellants bring forth four assignments of error. By their first assignment, they argue that the trial judge erred "by failing to find unconstitutional [North Carolina General Statutes] § 1-44.2 which both on its face and as applied, purports to divest defendants' vested and possessory property interests without affording defendants the notice and opportunity to be heard required by due process of law." We find this issue dispositive of defendants' appeal.

The United States Constitution as well as the North Carolina Constitution provides that no state shall deprive any person of life, liberty, or property, without due process of law. To demonstrate a property interest that falls within the purview of the Fourteenth Amendment, a party must show more than a mere expectation; he must have a legitimate claim of entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548 (1972).

The facts of the case *sub judice* make it clear that defendants have a property interest in the land at issue. Defendants hold title to the land, and the fee simple interest in property has been long recognized by law as a vested property interest. *See United States ex rel. Turner v. Fisher*, 222 U.S. 204, 56 L.Ed. 165 (1911); *see also Fishing Pier v. Town of Carolina Beach*, 274 N.C. 362, 163 S.E.2d 363 (1968), *appeal after remand*, 277 N.C. 297, 177 S.E.2d 513 (1970). Moreover, in addition to being record title holders to the land, defendants were in possession of the land prior to the enactment of the Statute. Therefore, defendants' vested property interest in the land at issue cannot be seized without the owner's consent or due process of law. *Eason v. Spence*, 232 N.C. 579, 61 S.E.2d 717 (1950).

Defendants, arguing that the Statute on its face is unconstitutional, state that the Statute "strips defendants' property interests without due process by failing to provide any notice reasonably calculated to assure actual notice," as required by *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L.Ed. 865 (1950). We do not agree that the Statute is unconstitutional on its face,

McDONALD'S CORP. v. DWYER

[111 N.C. App. 127 (1993)]

but we do find it unconstitutional in its application to fee simple landowners who are in possession of disputed property.

The Supreme Court of this State has held statutes violative of due process rights when, the statutes, without prior notice, purport to effect a forfeiture of property rights when an owner in possession fails to sue to establish those rights. *See Price v. Slagle*, 189 N.C. 757, 128 S.E. 161 (1925) (statute requiring property owners in possession to sue to clear title within a limited time after their property is sold to enforce tax liens are unconstitutional if they fail to give notice).

Plaintiffs-appellees argue, however, that *Sheets v. Walsh*, 217 N.C. 32, 6 S.E.2d 817 (1940) is controlling. In granting partial summary judgment for appellees, the trial court held that the agreed facts of this case cannot be materially distinguished from those in *Sheets*, and "the *Sheets* decision is controlling." We disagree, noting that the property owners in *Sheets* were not in possession of their property at the time the statute was enacted. We also note, while acknowledging that the law favors the use of land, that in *Sheets* the non-use or abandonment of the land therein materially distinguishes it from the case at bar.

In *Sheets*, the plaintiffs' land was included on two recorded plats. No one ever possessed the platted land, the platted streets were never built and were unnecessary for ingress and egress to lots sold within the parcel. In 1939, plaintiffs withdrew the land dedicated for streets from public use pursuant to a newly enacted statute which created a presumption of revocation of a dedication of streets by plat if the streets were not opened for 20 years. The defendants, who wanted to purchase the land, challenged the constitutionality of the statute on due process grounds, arguing that purchasers of lots within the plats were deprived of their vested rights to enforce the easements shown on the plats.

In *Sheets*, defendants' non-use of the land and their consequent failure to be in possession of the land allowed the statute to pass constitutional muster. The statute itself provided that the land would be conclusively abandoned by the public if it "shall not have been actually opened and used by the public within twenty years from and after the dedication thereof[.]" *Sheets* at 36, 6 S.E.2d at 820. In the instant case, the Statute makes no exception for owners in possession of the land and operates to divest those owners

of land even when they have been in actual possession and enjoyment of the land.

In the instant case, not only was the remedy by which such rights might be enforced changed, defendants were automatically deprived of their land by the Statute. "It is well settled that the Legislature may change the remedy, and as the statute of limitations applies to the remedy, that it may also change that, either by extending or shortening the time; provided, in the latter case a reasonable time is given for the commencement of an action before the statute works a bar." *Sheets* at 39, 6 S.E.2d at 821. Whatever pertains to the remedy may be modified by the Legislature if no substantial right is affected, provided a sufficient remedy is left to the parties. *Id.*

Defendants in *Sheets* were not being deprived of anything they claimed as their own. Moreover, since the law favors the use of land, defendants should have known that the non-use of land would result in the transfer of title or the waiver of right to use the land. The *Sheets* Court further held that no vested right was destroyed by the statute; rather, the remedy by which those rights could be enforced had changed. The Court held that the grantees of the deeds in which the references to maps were made had constructive notice of and a reasonable time to challenge the statute.

In the case now before us, however, the Statute operates to deprive defendants in possession and enjoyment of a vested property interest. We adopt the language of the Nebraska Supreme Court: "The right to commence and prosecute an action may be lost by delay, but the right to defend against a suit for the possession of property is never outlawed. The limitation law may, in a possessory action, deprive a suitor of his sword, but of his shield never." *Pinkham v. Pinkham*, 61 Neb. 336, 338, 85 N.W. 285 (1901).

Moreover, "in this State, a statute will not be given retroactive effect when such construction would interfere with vested rights[.]" *Lester Bros. v. Pope Realty & Insurance Co.*, 250 N.C. 565, 568, 109 S.E.2d 263, 266 (1959). "A retrospective statute affecting or changing vested rights, is founded on unconstitutional principles and [is] consequently void." *Id.* Retroactive divestment of property rights runs afoul of the Fourteenth Amendment to the United States Constitution. *Perry v. Perry*, 80 N.C. App. 169, 173, 341 S.E.2d 53, 56 (1986), *disc. review dismissed*, 320 N.C. 170, 357 S.E.2d 925 (1987).

COURTS v. ANNIE PENN MEMORIAL HOSPITAL

[111 N.C. App. 134 (1993)]

Before the Statute at issue in the case *sub judice* was enacted, defendants had acquired title to the disputed property and were in possession of the property. Therefore, the enactment of the Statute is retroactive and affects defendants' vested property rights. The Statute "under review not only bars the [defendants] of [their] right of recovery, but takes from [them their] property, transfers it to another and enables the other to recover and own it. The [defendants] not only lose [their] property, but by the magic of this [Statute] and without consideration received, it is vested absolutely in another." *Trustees of the University of North Carolina v. North Carolina Railroad Co.*, 76 N.C. 103, 107 (1877). The *Trustees* Court opined that "forfeitures of rights and property cannot be adjudged by legislative act; and confiscations without a judicial hearing, after due notice to the party to be affected, would be void, as not being by due process of law." *Id.* at 108.

Accordingly, we hold that North Carolina General Statutes § 1-44.2 is unconstitutional as it applies to fee simple landowners in possession of disputed property, in that it fails to provide them with adequate notice, an opportunity to be heard, and with just compensation.

The decision of the trial court is reversed.

Chief Judge ARNOLD and Judge ORR concur.